## McWHORTER v. BRADY *et al.*

No. 2891. Opinion Filed November 18, 1913.

Rehearing Denied February 3, 1914.

1. **LIS PENDENS—Notice.** The doctrine of lis pendens, under the common law, was based on the theory of public policy, while, under the statute, it is treated as an element of the law of notice.

2. **SAME—Elements of.** It is essential to the existence of a valid and effective lis pendens that three elements be present, viz.: First, the property must be of a character to be subject to the rule; second, the court must have jurisdiction both of the persons and the res; third, the property or res involved must be sufficiently described in the pleadings.

3. **SAME—Description—Notice—Sufficiency.** Record examined and held, under the circumstances of the case, the property was sufficiently described, and that the law relating to lis pendens was substantially complied with.

4. **HUSBAND AND WIFE—Homestead—Conveyance—Validity.** A homestead, the title to which is in the husband, cannot be sold or otherwise alienated by the husband, without the wife joining in the conveyance, unless the wife has voluntarily abandoned the husband, or, for any cause, has taken up her residence out of the state for a period of one year or more. A deed to a homestead, executed by a husband, without such abandonment or removal of residence on the part of the wife, is void.

5. **HOMESTEAD—Title—Conveyance—Validity.** Where, in a divorce case, a decree had been denied both parties, but the wife had been enjoined from interfering with the husband's possession of the homestead, she was not thereby divested of her right or title to and in the homestead, but was yet the legal wife of the husband, and any attempt by the latter to sell the homestead without the wife's consent or without her joining in the conveyance, was void.

6. **SAME—Wife Necessary Party to Conveyance.** Facts examined and held, that plaintiff in error has no title or color of title in and to a homestead attempted to be conveyed by the husband without being joined in the conveyance by the wife.

(Syllabus by Robertson, C.)

*Error from District Court, Beckham County;*
*John J. Carney, Judge.*

Action by Ellen Brady, and Elmer Brady, Johanna Brady, Adda Lillian Brady, and Bunyon Francis Brady, minors, by

guardian *ad litem*, against R. S. McWhorter, to recover possession of real estate. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Geo. L. Zink* and *J. H. Cline,* for plaintiff in error.

*Jno. B. Harrison* and *Arthur Leach,* for defendants in error.

Opinion by ROBERTSON, C. This is an action, in the nature of ejectment, by Ellen Brady and Elmer Brady, Johanna Brady, Adda Lillian Brady, and Bunyon Francis Brady, minors, against R. S. McWhorter to recover possession of certain described real estate in Beckham county, Okla. It appears from the record that J. H. Brady and Ellen Brady were husband and wife; that the land involved in this controversy was a government homestead which had been filed upon, and proved up, by Brady. On July 3, 1908, Ellen Brady brought suit in the district court of Beckham county against J. H. Brady for divorce, on the grounds of habitual drunkenness and cruel and inhuman treatment, and therein asked for the custody of their four minor children, and for an equitable division of their property, including the homestead, and also sought to enjoin her husband from selling or disposing of any of their property until the termination of the suit. The husband, J. H. Brady, was duly served with summons on the 8th day of July, 1908, and return thereof was made and filed on the same day. On July 10, 1908, two days later, the husband attempted to sell and convey the homestead by warranty deed to R. S. McWhorter, the plaintiff in error herein. It appears from the record that the wife had no knowledge of this conveyance, except the constructive knowledge that the recorded deed would give her, and it also affirmatively appears that she did not join her husband in the execution of the deed to McWhorter. The action for divorce was tried January 29, 1909, and the wife was given a decree of separation, the custody of the minor children, and the possession of the homestead, that being all the land owned by the parties at the time. In said divorce decree, the husband, J. H. Brady, was perpetually enjoined and barred of any and all right of possession to the homestead, until the further order of the court.

On July 29, 1909, the plaintiff in error, being in possession of the land by tenant, and refusing to give possession, was made defendant in this suit for possession by Ellen Brady. The plaintiff in error answered by general denial and cross-petition. Prior to the trial it was made to appear to the court that the minor children of Ellen and J. H. Brady had an interest in the tract of land, whereupon the court ordered them made parties to the action and appointed a guardian *ad litem* for them, who appeared and filed a general denial for them. The cause was tried in February, 1911, and resulted in a judgment in favor of the plaintiff and her minor children, for the possession of the land in controversy, until the further order of the court.

In addition to the above facts, it is also gathered from the record that the land in controversy, prior to statehood, was situated in Greer county; that by virtue of the provisions of the Constitution, creating Beckham county, the tract, after statehood, was situated in said Beckham county; that the said J. H. Brady made final proof and received his final receipt covering said tract of land on the 15th day of March, 1905, said final receipt being recorded in Greer county, on April 1, 1906, and the patent from the United States covering said tract of land was issued to the said Brady on October 10, 1905, the patent also being recorded in Greer county on the 6th day of April, 1906. It is also disclosed by the record that the relations between Brady and his wife were anything but amicable; that they frequently quarreled and also that they had separated several times, one separation occurring in the summer of 1906, when the wife left her husband on account of his cruel treatment. The evidence shows that thereafter she returned to the husband and, as an inducement to secure her return, he offered to, and did, deed her on April 10, 1906, the north half of the homestead; this deed was recorded in Greer county, Okla., on August 2, 1906; on the same day the wife made, executed and delivered to him her warranty deed, conveying thereby the south half of the same tract of land, which deed was also recorded in Greer county, Okla. Shortly after this exchange of deeds, the parties separated again. This was the final separation. On April

3, 1906, Brady brought suit against his wife for divorce in the district court of Greer county; on May 3, 1907, the wife appeared and filed her answer and cross-petition. Brady charged his wife, in the petition for divorce, with abandonment; the answer in the cross-petition by the wife charged cruelty and habitual intoxication; the cause was tried before the district court of Greer county on May 15, 1907, and both parties were denied a divorce; on the 16th day of May, 1907, the next day after the decree had been entered in the divorce case as last aforesaid, J. H. Brady, the husband, commenced an action in the district court of Greer county against the plaintiff, Ellen Brady, his wife, the object and purpose of which was to cancel the warranty deed he had theretofore executed to her, conveying the north half of the homestead; personal service of summons was had on the plaintiff and on the same day the district court issued a restraining order against Ellen Brady, the wife,. restraining her from selling or disposing of the north half of said tract of land until the action to cancel the deed could be heard and determined, and, also, restraining her from interfering with the possession of J. H. Brady, her husband, in the cultivation of a crop on said land. Default was made by Ellen Brady in this cause, and, on August 16, 1907, a judgment was entered against her and in favor of her husband, perpetually restraining Ellen Brady from interfering with her husband, J. H. Brady, in and to the whole of said land and cancelling the deed from the husband to the wife and divesting the title from the said Ellen Brady and *vesting the same in the husband and father, J. H. Brady, as trustee, for the minor children of said marriage.* No appeal was ever taken from this decree by either party.

From the judgment against McWhorter in favor of Ellen Brady, as entered by the district court of Beckham county in February, 1911, giving her the possession of the land, the defendant, McWhorter, appeals and assigns as error, "that the judgment and decision of the court below is not sustained by sufficient evidence and. is contrary to law."

Under this assignment of error several questions are raised by plaintiff in error in his brief, the first of which is that the

description of the premises in the petition of Ellen Brady for divorce was insufficient to constitute *lis pendens,* and that, therefore, plaintiff in error had no legal notice of the pending divorce suit and is an innocent purchaser, etc.

The paragraph in the divorce petition which deals with the description of the land reads as follows:

"That plaintiff has a homestead of 160 acres of land situated near Erick in Beckham county, Oklahoma, of the value of about $3,500; that final proof has been made on said tract, that said homestead was filed upon, improved and put in cultivation by the joint efforts and labor of plaintiff and defendant."

The sections of our statute dealing with the subject are 4732 and 4733, Rev. Laws 1910, the first of which reads as follows:

"Section 4732. When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within sixty days after the filing of the petition.

"Sec. 4733. When any part of real property, the subject-matter of an action, is situated in any other county or counties than the one in which the action is brought, a certified copy of the judgment in such action must be recorded in the office of the register of deeds of such other county or counties, before it shall operate therein as notice, so as to charge third persons, as provided in the preceding section. It shall operate as such notice, without record, in the county where it is rendered."

The doctrine of *lis pendens,* under the common law, was based on the theory of public policy, while, under our statute, it appears to be treated as an element of the law of notice.

It has been said (25 Cyc. 1451) "that it is essential to the existence of a valid and effective *lis pendens* that three elements be present: (1) The property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the *res;* (3) and the property or *res* involved must be sufficiently described in the pleadings."

There is no question concerning the first and second elements above named. Let us examine as to the third. In 25 Cyc. 1462, it is said:

"A purchaser or mortgagee or other person who would otherwise be affected by the rule of *lis pendens* is not affected by the pendency of an action, unless the pleadings therein, at the date of the purchase or the acquisition of rights, describe the property as to which the rule is sought to be applied so as to enable the purchaser or other third person to ascertain its identity. The property is sufficiently described, it would seem, although not described by metes and bounds, if described with reasonable certainty, *that is, if enough is alleged to enable a person upon reasonable inquiry to identify the property and ascertain the object of the suit."* (Italics ours.)

It is earnestly contended by plaintiff in error in his brief that the statute is no broader than the common-law rule and that the averments of the petition must be so definite that any one on reading it can learn what property was intended to be made subject of recovery. With this contention we cannot fully agree, for that the statutory rule governing *lis pendens* is broader and more comprehensive than the common-law rule, in that the statutory *lis pendens* partaking, as it does, of the nature and doctrine of notice, makes notice the channel or means through, or by which, the real object and purpose of *lis pendens* is attained. We are free to say that the description of the land in this petition is exceedingly vague and ordinarily would be held insufficient in the matter of notice, yet the object and purpose of the statute must be kept constantly in mind, and under the facts and circumstances of this case, if we can say that the plaintiff in error did, in fact, have notice of the situation and of the status of the land at the time he purchased the same, we must sustain the judgment of the trial court.

The statute makes a pending suit constructive notice and requires intending purchasers to exercise a reasonable care and diligence in ascertaining the nature of a pending suit; this requirement is everywhere recognized and abstractors are required to examine the records in the district clerk's office in order to ascertain whether the land, for which they are making an abstract of title, is involved in any pending actions and to so certify if such be the case.

Had plaintiff in error complied with the requirements of the statute, or exercised a reasonable degree of care in the premises,

he would have found that on July 3, 1908, Ellen Brady had filed her petition in the district court of Beckham county against J. H. Brady, asking for a divorce, and the custody of their minor children, also the possession of their homestead situated near Erick, in said county, which homestead had been filed upon, improved, and deeded by the joint efforts of said Ellen and J. H. Brady; he would also have found that the summons in said divorce case had been served on J. H. Brady and return thereof made and filed in the action on July 8, 1908, two whole days before he purchased the land.

McWhorter in his testimony (Case-made, p. 46) also shows that he had, prior to the purchase, been apprised of the status of the land, or, at least, was in possession of such facts and circumstances as would give a prudent man notice of the condition of the title. He says that he had never seen Brady before; that Brady came to his house one night and the next day the trade was made; that Brady told him he was a married man and had four children; that Brady showed him a decree signed by Judge Irwin, which decree was introduced in evidence, and is in the record, and which shows that Brady had been in a law suit in old Greer county with his wife over the identical piece of land; that he had deeded one 80 to his wife, but that this deed had been canceled for failure of consideration, and that the court had finally decreed the title to said tract in J. H. Brady, *as trustee, for the minor children of Brady and his wife.* In this decree, which McWhorter saw and examined prior to the purchase, the land was properly described, and said decree further showed Ellen Brady was the wife of J. H. Brady, and that the Union Central Life Insurance Company had a mortgage thereon, signed by both Brady and his wife. It is further shown (Case-made, pp. 66, 67) by the record that McWhorter saw and examined the final receipt from the Mangum Land Office, and the patent from the General Land Office at Washington, D. C., all of which showed the land to be the *homestead* of Brady.

The description of the land in Mrs. Brady's petition, standing alone, in our opinion, was not as full and complete as it should have been, yet, in the light of the foregoing facts, it

was, in our opinion, sufficient to apprise the purchaser of its status and to enable him to identify the same and to ascertain the object of the suit. The failure of McWhorter to examine the records of the district court of Beckham county, and the actual knowledge he possessed prior to the purchase, the decree, and other muniments of the title which he admits he examined, together with his failure to use or exercise any degree of diligence, especially that degree required by law, leads us to say that the law relating to *lis pendens* was substantially complied with and that plaintiff in error's contention to the contrary cannot be sustained.

It is next contended by plaintiff in error that the deed to the land was good with J. H. Brady's signature alone, and that the wife's signature thereto was unnecessary.

Section 1145, Rev. Laws 1910, which was in force at the time this cause was tried, reads as follows:

"Where the title to the homestead is in the husband, and the wife voluntarily abandons him for a period of one year, or from any cause takes up her residence out of the state, he may convey, mortgage or make any contract relating thereto without being joined therein by her; and where the title to the homestead is in the wife, and the husband voluntarily abandons her, or from any cause takes up his residence out of the state for a period of one year, she may convey, mortgage or make any contract relating thereto without being joined therein by him."

It is thus seen that, before a deed to a homestead signed by one spouse only constitutes a good conveyance, the abandonment must be *voluntary*. In the case at bar, the evidence shows the contrary to be true. This was an issue in the trial below, duly submitted to the court by the parties by the evidence, which was conflicting. The court resolved the question in favor of the wife's contention, and in this there was no mistake. This court will not examine the evidence, where issues of fact are involved, further than to ascertain if there be any evidence reasonably tending to support the finding of the trial court or jury. If such there be, the finding of the court, or the verdict of the jury, will be conclusive on appeal.

It is next urged that Ellen Brady had no right to a decree of divorce as entered in the district court of Beckham county, for that the district court of Greer county some years prior to the rendering of the last-named judgment, had denied both parties a divorce on the same grounds set up in the petition for divorce in Beckham county, and that the last action·in Beckham county required an examination of the identical facts upon which the district court of Greer county denied the divorce, and that, therefore, the questions raised were *res adjudicata.* To this contention it is sufficient to say that the record fails to show that such are the facts; the record does not show affirmatively or otherwise that the same facts examined by the district court of Greer county formed the basis of the divorce action in Beckham county, or whether the district court of Beckham county examined and considered the same facts as were examined and considered by the district court of Greer county, or whether that issue was within the pleadings of the Greer county case.   No copy of the pleadings in the last-named case were pleaded or proved in this case, and it is impossible for us to say what the real issues were in the Greer county case, although it seems to be admitted that the charge on the part of the plaintiff was abandonment, and on the part of Mrs. Brady was cruel and inhuman treatment and habitual intoxication.  Yet we know that under the general head of cruel and inhuman treatment the pleader could set out in the Beckham county case issues and facts wholly different and occurring subsequently to those tried in the Greer county case, although they might properly be classed under the same general name.  Before this plea, *i. e., res adjudicata,* as urged here can be sustained in this particular, it should affirmatively appear of record that the issues and facts upon which the former judgment was rendered are the same issues and facts and were properly submitted to and considered by the court by the pleadings in the latter action, and were the same issues and facts upon which the latter judgment was based.   This record is silent on the subject, and the presumption follows that the issues were other and different from those of the former action.   Yet, whether those facts were the same or not, and

whether the issues were the same and were within the pleadings in both cases, it is a matter of no consequence, so far as this case is concerned, and it is unnecessary to decide that question, and we, therefore, decline to do so, because Ellen Brady, up to the time of the Beckham county divorce case, was the legal wife of J. H. Brady, and as such had a homestead interest in the land in controversy (provided, of course, the title to the same was in Brady, but of which see *post*) and the deed from Brady to McWhorter prior to their divorce would not be valid without her signature. This fact cannot be gainsaid. No argument is required to establish the correctness of this proposition.

Finally it is urged by plaintiff in error that the decree of the district court of Greer county canceled the deed from J. H. Brady to his wife, and also perpetually enjoined her from interfering in any way with his right of possession. It will be remembered that prior to the Greer county divorce case the parties had separated and that Brady deeded one 80 acres of the farm to his wife, and she in turn deeded the other 80 acres to him; after the decree of divorce had been denied both parties by the Greer county district court, Brady brought suit to cancel the deed he had made to his wife, on the grounds of no consideration, etc.; the court granted the prayer of his petition and a default judgment was entered against the wife, but the court, instead of vesting the title in Brady, vested it in him as *trustee for the use and benefit of the minor children of the couple*. From this decree no appeal was ever taken, and the same, so far as this case is concerned, became final. This being true, Ellen Brady occupied the position of wife to J. H. Brady and the restraining order preventing her from interfering with her husband's possession did not alter her relation in that respect, nor divest her of the homestead title to the land that she, by virtue of such relation, possessed. Even though the Greer county decree should be construed to vest the entire legal title of the land in J. H. Brady, still she, as his legal wife, would yet possess a homestead interest in and to the land in question, it being the only land possessed by them or either of them. On the other hand, it is contended by plaintiff in error that while the

Greer county decree vested the entire title of the land in J. H. Brady, the husband, and that such part of said decree is valid, yet that part which vests the title in him as trustee for the use and benefit of his minor children is void. This is indeed an inconsistent contention. If the decree is void as to the children, we cannot see why it is not void as to Brady. The decree cannot be attacked by McWhorter in this action in this manner; nor need we decide whether it might not, in a proper case, by the proper parties, be modified, altered,. or annulled. So long as Brady and his wife were satisfied with it and did not appeal therefrom or question it in any manner, surely McWhorter, Brady's grantee, cannot in this proceeding do so.

As we·view it, McWhorter has no title, or color of title in and to this land. In order to fully understand his position, it becomes necessary to examine the decree of the Greer county district court upon which he bases his title. It reads as follows:

"Journal Entry.

"This cause coming on to be heard this 16th day of August, as a regular court day within the August term of said court, and the defendant, though having been personally served more than forty days prior to the date set for hearing as shown by the sheriff's return, and having been called in open court to answer, plead, or demur, and not appearing, either in person or by attorney, and the plaintiff appearing in person and by attorney, and having introduced testimony, and the court having heard all the evidence and being fully advised in the premises, finds that the deed to the S. E. ¼ of section 10, township 8, north of range 26, west I. M., made, executed and delivered by said plaintiff to said defendant was without consideration and void.

"Wherefore, it is hereby ordered, adjudged, and decreed that the said deed be set aside, and that the title to said land be, and the same is hereby *vested in J. H. Brady, as trustee for and in behalf of the minor children of said marriage* (italics ours) and that the said defendant be perpetually restrained from interfering with the possession of the said plaintiff in and to said land.

"C. F. Irwin, Judge.

"Filed Nov. 6, 1907, E. M. Hegler, Clerk.

"By J. W. Sproat, Deputy."

It is thus seen that Brady had no title in himself, but held the land simply as trustee for his minor children.

Aside from the question of *lis pendens* and the failure of Brady to give McWhorter a deed in which he was joined by his wife, it being found that her abandonment was involuntary and occasioned by the wrongful conduct of Brady, either of which questions would render the transfer void, it is evident that Brady had no interest in the land which he could convey, the title being in his minor children.

We fail to detect any error in the judgment of the trial court, and the same should, therefore, be affirmed.

By the Court:   It is so ordered.