In re Larry L. ABBOUD, Debtor.

Larry L. Abboud, Plaintiff,

v.

Thomas J. Abboud, Defendant.

Bankruptcy No. 98–03314–M.
Adversary No. 99–0086–M.

United States Bankruptcy Court,
N.D. Oklahoma.

April 16, 1999.

James Conrady, Okmulgee, OK, for plaintiff.

Sam Bratton, Tulsa, OK, for defendant.

Lonnie D. Eck, Tulsa, OK, Standing Chapter 13 Trustee, pro se.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Debtor's Objection to Proof of Claim of Thomas Abboud filed by Larry L. Abboud (the "Objection") on September 1, 1998. An evidentiary hearing in the matter was held on February 11, 1999. At the hearing, the Court heard testimony and received evidence. James A. Conrady appeared as attorney for Larry L. Abboud, Debtor herein ("Debtor"). Sam G. Bratton appeared as attorney for Thomas J. Abboud, creditor herein ("Thomas" or "Creditor"). The Standing Chapter 13 Trustee, Lonnie D. Eck ("Trustee"), appeared *pro se*. At the conclusion of the hearing the Court permitted the parties to submit post-trial briefs. The matter was taken under advisement as of March 14, 1999. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and it is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(B).

### Procedural History

This voluntary Chapter 13 bankruptcy case was filed on August 17, 1998. In his schedules, the Debtor listed a disputed claim to Thomas in the total amount of $174,916.30. Said claim arose from a judgment entered February 2, 1998, in the District Court in and for Tulsa County, Oklahoma (the "State Court Judgment"). Thomas filed a proof of claim in the case on August 19, 1998, in the amount of $182,-726.28, representing the amounts awarded to him under the State Court Judgment, including principal and interest (the "Claim"). The Claim was filed as a secured claim, as the State Court Judgment recognized as valid a lien held by Thomas on certain real estate located in Tulsa County, Oklahoma. Debtor filed the Objection on September 1, 1998. Also on September 1, 1998, Debtor filed his First Chapter 13 Plan (the "Plan") proposing to pay every undisputed claim in full, however, providing for zero payment to Thomas. Thomas filed an Objection to Confirmation of the Plan on September 29, 1998. The confirmation hearing on the Plan has been continued until the Objection has been ruled upon.

After this matter was taken under advisement, it became apparent to the Court that the relief sought by Debtor included avoidance of the lien recognized under the State Court Judgment. In such a case, Bankruptcy Rules 3007 and 7001 require that the objection to claim be treated as an adversary proceeding.[2] On March 31, 1999, the Court held a status hearing on the matter, at which the parties agreed that the Objection should be docketed as an adversary proceeding. On April 15, 1999, an order was entered treating the Objection as an adversary proceeding.

### Findings of Fact

Debtor purchased certain property located in Tulsa County (the "Property")

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

2. Bankruptcy Rule 3007 provides that "[i]f an objection to claim is joined with a demand for relief of the kind specified in [Bankruptcy] Rule 7001, it becomes an adversary proceeding." Bankruptcy Rule 7001 requires that any action "to determine the validity, priority or extent of a lien or other interest in property" be brought as an adversary proceeding.

from the estate of Alice Ramsey Kilgore by virtue of a general warranty deed on May 15, 1981. Said deed was properly recorded on the same day. Debtor executed a purchase money mortgage to Lawrence Albert Kilgore, executor of the estate of Alice Ramsey Kilgore, in payment for the Property. The purchase money mortgage was recorded the same day as the deed. On December 2, 1986, Thomas paid off the balance of the purchase money mortgage on the Property, taxes due and owing on the Property, and attorney fees for a total amount of $60,207.53. Thomas had also paid a previous debt for Debtor in the amount of $23,881.33. In consideration for the payment of the above debts, Debtor conveyed the Property to Thomas by general warranty deed on December 4, 1986. The deed was properly recorded. Contemporaneously with the conveyance from Debtor to Thomas, they entered into a Contract for Deed which would allow the Property to be reconveyed to Debtor upon the payment of $84,089.76 to Thomas. The Contract for Deed provided that the entire sum should be paid by December 2, 1988.

Debtor defaulted on the Contract for Deed, and Thomas instituted a foreclosure action (the "State Court Action") in the District Court in and for Tulsa County, Oklahoma ("State Court"). In the State Court Action, Debtor argued that the statute of limitations had run on the Contract for Deed, thereby preventing Thomas from enforcing the same. The State Court rejected this argument and explicitly found, based on Oklahoma case law, that it would be ". . . error to cancel [a] mortgage on the ground that it is stale and unenforceable, and defendant should have been required as a condition to cancellation, to pay the amount secured thereby under the equitable rule that he who seeks equity must do equity." *See State Court Judgment* at p. 4 citing *Warner v. Wickizer*, 146 Okla.

232, 294 P. 130 (1930). On February 2, 1998, the State Court Judgment was entered in favor of Thomas and against Debtor in the amount of $174,916.30, plus costs, with interest accruing after May 2, 1997, at the rate of ten percent (10%) per annum. The State Court Judgment recognized the validity of the lien held by Thomas on the Property, and ordered the sale of the Property. The State Court·Judgment has been appealed to the Supreme Court of the State of Oklahoma (the "Appeal"). The Appeal is pending at this time.[3]

### Burden of Proof

■ Federal Rule of Bankruptcy Procedure 3001(f) states that "a proof of claim executed and filed shall constitute prima facie evidence of the validity of the amount of the claim," thereby putting the initial burden on the objecting party. Fed. R.Bankr.P. 3001(f).

> The objecting party carries the burden of going forward with evidence supporting his objection to the validity of the amount of the claim. *Matter of Townview Nursing Home*, 28 B.R. 431 (Bankr.S.D.N.Y.1983); *In re Breezewood Acres, Inc.*, 28 B.R. 32 (Bankr. M.D.Pa.1982). Such evidence must be of a probative force equal to that of the allegations of the creditor's proof of claim. 3 Collier on Bankruptcy, P 502.01[3] p. 502–17 (Rel.10–9/83). If the objecting party succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion then rests on the claimant. *Matter of Texlon*, 28 B.R. 525 (Bankr.S.D.N.Y. 1983).

*In re Wells*, 51 B.R. 563, 566 (Bankr. D.Colo.1985); *see also In re Ford*, 194 B.R. 583, 587–588 (S.D.Ohio 1995).

### Conclusions of Law

■ The main issue addressed by the parties in their post-trial briefs was whether the doctrine of *res judicata* would

---

**3.** This recital of facts is based largely upon the findings made by the State Court as outlined in the State Court Judgment.

prevent this Court from reexamining the validity of the State Court Judgment rendered in favor of Thomas against Debtor. Res judicata is a well-established and long-standing doctrine; and "[t]he doctrine of *res judicata* applies generally to bankruptcy proceeding." *In re Griego*, 64 F.3d 580, 585 (10th Cir.1995) (citations omitted). This Court must look to the laws of the state of Oklahoma to determine the preclusive effect of the judgment entered against Debtor. The Supreme Court of the United States has ruled that

> [t]he preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. *This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.* "It has long been established that § 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (emphasis added).[4] The Oklahoma Supreme Court has ruled that

[u]nder the principle of claim preclusion, a *final judgment* on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. The doctrine of claim preclusion is designed to prevent piecemeal litigation through the splitting of a single claim into separate lawsuits. When claim preclusion is asserted, the court must analyze the claim involved in the prior action to ascertain whether it is in fact the same as that asserted in the subsequent action.

*Miller v. Miller*, 956 P.2d 887, 896 (Okla. 1998) (emphasis added and footnotes omitted). However, the doctrine of res judicata can only be applied when the underlying judgment is a final judgment. The Oklahoma Supreme Court has "consistently held to the rule that a final adjudication is either one in which no appeal has been taken and the time for appeal has run or one in which an appeal has been filed and acted upon by the appellate court." *Grider v. USX Corp.*, 847 P.2d 779, 784 (Okla. 1993). In this case the State Court Judgment was appealed to the Oklahoma Supreme Court and the Appeal remains undecided. Therefore, the State Court Judgment is not a final judgment; and consequently the doctrine of *res judicata* does not apply.

The fact that *res judicata* does not apply does not render the State Court Judgment meaningless. Debtor and Thomas were given the full and fair opportunity to litigate their claims and the issues underlying the claims in the State Court Action, in-

---

**4.** 28 U.S.C. § 1738 provides as follows:

*1738. State and Territorial statutes and judicial proceedings; full faith and credit*

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto. The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States

and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

cluding the statute of limitations argument which Debtor advances here. The State Court considered the statute of limitations argument, rejected it, found that the debt owed by Debtor to Thomas was valid and enforceable, and found that Thomas held an enforceable lien against the Property. Faced with an adverse decision from the State Court, Debtor seeks a different result from this Court.

The doctrines of *res judicata* and collateral estoppel are very closely related to the *Rooker–Feldman* doctrine.[5] Under the *Rooker–Feldman* doctrine,

... lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions. In a nutshell, the doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments.

*In re Reitnauer,* 152 F.3d 341, 343 (5th Cir.1998) (footnotes omitted); *see also In re Goetzman,* 91 F.3d 1173, 1177 (8th Cir. 1996). Our Court of Appeals has held that

The *Rooker–Feldman* doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). As a rule, federal review of state court judgments can be obtained only in the United States Supreme Court. *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (citing 28 U.S.C. § 1257; *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)); *see also Rooker,* 263 U.S. at 415–16, 44 S.Ct. 149, 68 L.Ed. 362. Generally, a federal district court cannot review matters actually decided by a state court, *Rooker,*

263 U.S. at 415, 44 S.Ct. 149, 68 L.Ed. 362, nor can it issue "any declaratory relief that is 'inextricably intertwined' with the state court judgment," *Facio v. Jones,* 929 F.2d 541, 543 (10th Cir.1991) (quoting *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (extending doctrine to issues not actually decided by the state court)).

*Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir.1998). Under the *Rooker–Feldman* doctrine, it is not necessary that the underlying judgment be a final judgment. *See In re Goetzman,* 91 F.3d at 1177. Hence, the *Rooker–Feldman* doctrine, in contrast to the doctrine of *res judicata,* is applicable in this case.

The determinative issue when applying the *Rooker–Feldman* doctrine is whether the claim at issue is "inextricably intertwined" with the state court judgment. The United States Supreme Court has defined the term "inextricably intertwined."

While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. *Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.*

*Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (emphasis added). The Court concludes that the Objection in this Court is "inextri-

---

**5.** The *Rooker–Feldman* doctrine developed pursuant to two United States Supreme Court decisions: *Rooker v. Fidelity Trust Co. et al.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals, et al. v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

cably intertwined" with the merits of the State Court Action. In order to sustain the Objection, this Court must effectively vacate and/or reverse the decision of the State Court on the statute of limitations issue; indeed, the Debtor has expressly requested this Court to revisit the statute of limitations issue.[6] The *Rooker–Feldman* doctrine prevents the Court from doing so. Debtor's only appropriate avenue of review is through an appeal to the Oklahoma Supreme Court.

The Court finds that the State Court Judgment is valid and enforceable and that Thomas has a valid claim in the amount of $182,726.28, plus interest, fees and expenses as may be allowable under 11 U.S.C. § 506, secured by a valid lien upon the Property. The Court further finds that the Claim must be allowed in said amount for the purposes of this bankruptcy, and the Objection must be overruled.

---

**6.** Paragraph 3 of the Objection states that "[t]he claim [of Thomas] is avoidable and subject to collateral attack because the judgment is contrary to the Laws [sic] of the State of Oklahoma with respect to the applicable Statute of Limitations [sic] for bringing the [State Court] Action." *Objection,* ¶ 3.