FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

September 11, 2025

Anne M. Zoltani
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE GREGORY RYAN HARDING AND DENICE ROCHELLE HENRY, | BAP No. WO-24-15 |
| Debtors. | |
| _____ | Bankr. No. 22-12512 |
| JASON WINICK, | Chapter 7 |
| Appellant, | |
| v. | |
| ROSEMARIE PELFREY REVOCABLE TRUST, | OPINION |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the Western District of Oklahoma

_____

Submitted on the briefs.[2]

_____

Before **SOMERS**, **JACOBVITZ**, and **PARKER**, Bankruptcy Judges.

_____

**PARKER**, Bankruptcy Judge.

_____

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b). The case is therefore ordered submitted without oral argument.

I.     **Introduction**

This matter involves a construction project gone awry and an attempt at financial recovery. The crux of the case concerns whether Appellant Jason Winick's proof of claim asserts a valid claim against the appropriate party. Ultimately, for the reasons that follow, the Court affirms the Bankruptcy Court's ruling disallowing Winick's claim.

II.     **Background**

On July 31, 2017, Winick hired G&D Construction, LLC ("G&D"), an entity owned by Gregory Harding and Denice Henry, to construct an addition to Winick's home. Winick and G&D entered into a written agreement, which listed the work that G&D would perform and the total price for the work. Winick asserted G&D failed to follow the applicable municipal codes in performing the contracted work. As a result, Winick spent additional amounts to fix the code violations and complete the construction.

In August 2019, Winick sued Harding in Oklahoma state court. The caption of Winick's petition listed the defendant as "Greg Harding d/b/a G & D CONSTRUCTION, L.L.C., and d/b/a G & D CONSTRUCTION."[3] The body of the petition stated, in relevant part, "Harding does business as G & D Construction L.L.C. and G & D Construction."[4] The petition included claims against Harding for breach of contract and fraud. After many delays, the case was scheduled for trial on November 3–4, 2022.

On October 28, 2022, Harding and Henry filed a voluntary chapter 7 bankruptcy petition. Their bankruptcy schedules listed the Rosemarie Pelfrey Revocable Trust

---

[3] *Petition*, *in* Appellant's App. at 113.
[4] *Id.*

2

("Trust"), the Appellee herein, as having a $15,000 secured claim against Harding and Henry's residence (which itself had a value of $525,000).

On April 4, 2023, Winick filed a proof of claim in the amount of $29,000.[5] Winick alleged the basis of the claim was "[p]ayments made for construction work that was inappropriately done/breach of contract damages."[6] On April 19, 2023, Winick filed an amended proof of claim ("Claim") in the amount of $53,890.03. The Claim alleged "breach of contract, fraud, payment to repair inappropriate work done."[7] On April 23, 2024, the Trust filed an objection to the Claim asserting that because the construction contract ("Agreement") was between Winick and G&D, not Harding and Henry, Harding and Henry were not liable for breach of contract damages. The Trust also disputed the Claim's amount.

On July 24, 2024, the Bankruptcy Court conducted an evidentiary hearing on the objection to the Claim. Both Winick and Harding testified at the hearing, and following the testimony, the Bankruptcy Court concluded the Trust had standing to object to Winick's Claim.[8] That conclusion is not at issue in this appeal. The Bankruptcy Court ultimately disallowed Winick's claim after finding the Agreement was between Winick and G&D.

---

[5] *Proof of Claim* at 2, *in* Appellant's App. at 109.

[6] *Id.*

[7] Claim at 2, *in* Appellant's App. at 132.

[8] The Bankruptcy Court found that "the creditor had the standing to file this objection" because "[t]he right to object to claims under Section 502(a) to creditors is unqualified." *See Amended Transcript* at 62–63, *in* Appellant's App. at 312–13.

On July 26, 2024, the Bankruptcy Court issued an *Order Sustaining Rosemarie Pelfrey Revocable Trust's Objection to Jason Winick's Proof of Claim (#14)* ("Order").[9] On August 5, 2024, Winick appealed the Order.

## III.    Jurisdiction

The BAP has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[10] Winick timely filed a notice of appeal from the Order.[11] No party has elected to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear this appeal.

## IV.    Issues on Appeal and Standard of Review

Winick raises five issues on appeal, which are summarized as follows:

(1) Did the Bankruptcy Court err by finding that Winick's proof of claim did not constitute prima facie evidence of a valid claim?

(2) Did the Bankruptcy Court abuse its discretion by refusing to pierce the corporate veil and hold Harding liable?

(3) Did the Bankruptcy Court abuse its discretion by refusing to allow Winick to present evidence?

(4) Did the Bankruptcy Court abuse its discretion by declining leniency to Winick?

---

[9] Order, *in* Appellant's App. at 498.

[10] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[11] *See In re Murray*, 506 B.R. 129 (10th Cir. BAP 2014), *aff'd*, 586 F. App'x 477 (10th Cir. 2014) ("An order disposing of an objection to a creditor's claim is a final order for purposes of appeal.").

(5) Did the Bankruptcy Court abuse its discretion by restricting Winick's testimony?[12]

This Court reviews a bankruptcy court's decision to disallow a proof of claim de novo.[13] "De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[14]

This Court reviews decisions to pierce the corporate veil for abuse of discretion.[15] Additionally, it reviews the bankruptcy court's "procedural and evidentiary rulings" for abuse of discretion.[16] Under the abuse of discretion standard, this court will not disturb a bankruptcy court's decision unless the Court has "a definite and firm conviction that the bankruptcy court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances."[17] A clear example of an abuse of discretion exists

---

[12] *See* Appellant's Br. at 1–2.

[13] The procedures related to the allowance of proofs of claim are governed by numerous provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and a bankruptcy court's interpretation and application of the Bankruptcy Code is reviewed de novo. *In re Hesser*, 984 F.2d 345, 348 (10th Cir. 1993) ("interpretation and application of the Bankruptcy Code . . . is subject to de novo review"); *In re Taylor*, 737 F.3d 670, 674–75 (10th Cir. 2013) (reviewing whether a bankruptcy court erred in its interpretation of the Bankruptcy Code de novo).

[14] *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[15] Oklahoma law treats veil piercing as an "equitable doctrine." *Mattingly L. Firm, P.C. v. Henson*, 466 P.3d 590, 593 (Okla. Civ. App. 2019). Given that "veil piercing is an equitable remedy," the Tenth Circuit reviews decisions to pierce the corporate veil for abuse of discretion. *Boxer F2, L.P. v. Bronchick*, 722 F. App'x 791, 798 (10th Cir. 2018) (unpublished) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005)).

[16] *In re Kleinhans*, 438 B.R. 355, 2010 WL 1221751 at *3 (10th Cir. BAP March 30, 2010) (unpublished). *See also In re Kim*, 809 F. App'x 527, 536 (10th Cir. 2020) (When an appellant challenges a hearsay ruling, he bears "a particularly heavy burden.").

[17] *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986).

where the trial court "commits a legal error or relies on clearly erroneous factual findings."[18]

## V.    Analysis

### 1.    The Bankruptcy Court Did Not Err When It Found Winick's Proof of Claim Did Not Constitute Prima Facie Evidence of a Valid Claim.

11 U.S.C. § 502(b)(1)[19] provides that, subject to certain exceptions not relevant here, if an objection to a proof of claim is made, "the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor." Pursuant to Rule 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Of importance to this case,

> [w]hen the face of a proof of claim does not assert a claim against the debtor and, in fact, admits that the basis of the claim is for services rendered, money loaned, or employment by a nondebtor person or entity, it is not properly executed and filed in the debtor's case, and it cannot be prima facie evidence of the validity and the amount of a claim against the debtor under Federal Rule of Bankruptcy Procedure 3001(f).[20]

---

[18] *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1210 (10th Cir. 2022); *see also Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) ("A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." (internal citation omitted)).

[19] Unless otherwise noted, all references to "Section," "§," "Bankruptcy Code," and "Code" refer to the United States Bankruptcy Code, 11 U.S.C. § 101, et seq., and all references to the "Rules" refer to the Federal Rules of Bankruptcy Procedure.

[20] *In re Broadband Wireless Int'l Corp.*, 295 B.R. 140, 146 (10th Cir. BAP 2003) (citing 11 U.S.C. § 502(b)(1)).

The objecting party has the burden to rebut the prima facie validity of the claim, and if that occurs, the claimant has the burden to establish the validity of the claim by a preponderance of the evidence.[21] "If [an] objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim."[22]

The Bankruptcy Court noted "that the basis of the claim [wa]s services rendered . . . by a nondebtor" and thus was "not properly executed and filed in the Court's case and [could not] be prima facie evidence of the validity and amount of the claim against the debtor under Rule 3001(f)."[23] The Bankruptcy Court found the burden shifted to Winick given the Claim did not constitute prima facie evidence of a claim.[24] The Bankruptcy Court in turn found the Agreement was between Winick and G&D[25] and there was no evidence the debt at issue was a debt of Harding but rather the evidence showed it was instead a debt of G&D.[26]

Winick argues the Bankruptcy Court erred in concluding he failed to assert a valid proof of claim. Specifically, Winick argues the Bankruptcy Court erred in (1) failing to conclude the Claim was prima facie evidence of Winick's claim; (2) failing to find the Trust's Objection to Claim "lacked evidence with probative force equal to that of the

---

[21] *In re Steele*, 996 F.2d 311 (10th Cir. 1993) (internal citations omitted).

[22] *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir. 1993) (internal citation and quotations omitted).

[23] *Am. Tr.* at 5, *in* Appellant's App. at 255 (quoting *In re Broadband Wireless Int'l Corp.*, 295 B.R. 140, 146 (10th Cir. BAP 2003)).

[24] *Id.* at 5–6, *in* Appellant's App. at 255–56.

[25] *Id.* at 64, *in* Appellant's App. at 314.

[26] *Id.* at 68, *in* Appellant's App. at 318.

[amended proof of claim] and attachments[;]"[27] (3) failing to find Harding stepped outside his role as an agent of G&D and committed a tortious act against Winick;[28] (4) finding Winick failed to meet his burden of proof at the Claim hearing; and (5) "not shifting the burden to [the] Trust to present evidence to the contrary of the [Claim], attachments and trial evidence and testimony"[29] regarding Winick's fraud claim.

A review of the record on appeal supports the Bankruptcy Court's decision. The key attachment to the Claim was a copy of the Agreement between Winick and G&D.[30] That document listed G&D's name, address, phone number, and email at the top of the first page and then proceeded to outline the work that was to be performed.[31] Nothing in the Agreement indicated it was Harding, rather than G&D, who was to perform the agreed-upon construction work. The Claim also included an attachment of a copy of an email Winick sent to Harding on March 7, 2018.[32] In the opening sentence of the email, Winick stated "[c]onstruction of an addition to an existing home was agreed upon by both the contractor, G&D Construction LLC, and homeowner, Jason Winick . . . on 07/31/2017."[33] As for the statement in the Claim that the basis of the claim was, in part, "fraud," there was nothing in the Claim or the Claim attachments that provided any further explanation of, let alone evidentiary support for, fraud. As such, the Bankruptcy

---

[27] Appellant's Br. at 16.

[28] *Id.* at 17.

[29] *Id.* at 21.

[30] Agreement, *in* Appellant's App. at 137–38.

[31] *Id.*

[32] *Construction Letter*, *in* Appellant's App. at 139.

[33] *Id.*

Court did not err by finding the Claim did not constitute prima facie evidence and by shifting the burden accordingly.

### 2. The Bankruptcy Court Did Not Abuse Its Discretion by Declining to Pierce the Corporate Veil.

"[U]nder Oklahoma law, the separate corporate existence, and the protection from liability it affords, may be ignored: (i) on the basis of alter ego theory; (ii) when incorporation is a design or scheme to perpetrate a fraud; or (iii) when it is used to defeat an overriding public policy."[34] "In other words, it must appear that [the] corporation [at issue] is merely a dummy or a sham."[35]

The alter ego principle of liability equally applies to limited liability companies.[36] A court may choose to disregard a limited liability company as a separate entity when it becomes the alter ego of one or more members.[37] The factors Oklahoma courts consider in determining whether an LLC is the member's alter ego are "whether (1) the LLC is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the LLC or vice versa, or (4) the LLC is merely a sham."[38]

At the conclusion of the Claim hearing, the Bankruptcy Court found there was no evidence G&D was a design or scheme to perpetrate fraud.[39] The Bankruptcy Court in

---

[34] *In re Thompson*, 585 B.R. 890, 905 (Bankr. W.D. Okla. 2017).
[35] *King v. Mod. Music Co.*, 33 P.3d 947, 952 (Okla. Civ. App. 2001).
[36] *Lifetouch Nat'l Sch. Studios Inc. v. Okla. Sch. Pictures, LLC*, 554 P.3d 764, 774 (Okla. Civ. App. 2024).
[37] *Mattingly L. Firm, P.C. v. Henson*, 466 P.3d 590, 595 (Okla. Civ. App. 2019).
[38] *Id.*
[39] *Am. Tr.* at 66, *in* Appellant's App. at 316.

turn found no evidence Harding "was intermingling his funds with the entity funds" or "was ignoring corporate formalities or LLC formalities."[40]

Winick's argument before this Court focuses on proving fraud to pierce the corporate veil and hold Harding liable.[41] Winick argues the Bankruptcy Court erred by finding no evidence of fraud.[42]

To support his fraud argument, Winick testified regarding a certificate from the Oklahoma Secretary of State ("Certificate")[43] showing G&D failed on several occasions to properly maintain its registration.[44] Winick did not seek to admit the Certificate into evidence and the Certificate alone would not establish fraud. Additionally, there was nothing in the Claim or the attachments that provided any further explanation of, let alone evidentiary support for, fraud. Thus, Winick failed to produce evidence of fraud.

The Bankruptcy Court's factual findings on fraud and alter ego liability are not clearly erroneous. In turn, the Bankruptcy Court did not abuse its discretion in not finding

---

[40] *Id.* at 67, *in* Appellant's App. at 317.

[41] Winick effectively concedes in his opening brief that he based his veil piercing theory solely on a claim of fraud. Appellant's Br. at 22 ("The entirety of [t]he Appellant argument is fraud. *Alter ego* is a word used in the precedents for piercing the veil but that was one of two ways to pierce the veil. Appellant's focus was on a showing of fraud committed by Debtor to pierce the veil.").

[42] Appellant's Br. at 22 (The Bankruptcy Court "erred when it did not find fraud and pierce the corporate veil and hold debtor liable. . . . Appellant's focus was on a showing of fraud committed by Debtor to pierce the veil.").

[43] Although Appellant submits a copy of the Certificate to this Court and Appellee has not moved to strike such submission, it does not appear the Certificate was properly before the Bankruptcy Court, and thus, this Court is not required to consider it. *See* 10th Cir. BAP L.R. 8018-1(g).

[44] Certificate, *in* Appellant's App. at 496 (noting G&D's status was terminated and reinstated on numerous occasions between 2011 and 2023).

fraud, not piercing the corporate veil, and not holding Harding responsible for G&D's liabilities.

### 3.    The Bankruptcy Court Did Not Abuse Its Discretion by Refusing to Allow Winick to Present Evidence.

Pursuant to Federal Rule of Evidence 801(c), hearsay refers to an out-of-court statement that is being offered in court for the truth of the matter being asserted. Federal Rule of Evidence 803(8) provides a hearsay exception for certain public records, and Federal Rule of Evidence 902(4) provides that certain public records are self-authenticating.

Winick testified about the LLC's administrative status at the Claim hearing.[45] The Bankruptcy Court, however, excluded Winick's testimony regarding the LLC's status noting it was "pure hearsay."[46] The Bankruptcy Court further noted on the record, "[t]hat's [i.e., Winick's statement that G&D's corporate status had been terminated at the time of the Agreement was] a bold claim that could easily have been supported."[47]

Winick argues the Bankruptcy Court erroneously prohibited him from introducing evidence regarding G&D's status at the time it entered into the Agreement with Winick. Winick points to the Certificate indicating G&D's corporate status was apparently terminated and reinstated on multiple occasions between 2011 and 2023. Winick argues the Bankruptcy Court should have admitted the Certificate under the public records

---

[45] *Am. Tr.* at 14–15, *in* Appellant's App. at 264–65 ("[H]e didn't even have an LLC. On this day it was an expired, defunct, inactive company. . . . Because the secretary of state office shows that . . . it said expired. . . .").

[46] *Id.* at 15, *in* Appellant's App. at 265.

[47] *Id.*

11

exception outlined in Federal Rule of Evidence 803(8). Alternatively, Winick argues the Bankruptcy Court should have treated the Certificate as self-authenticating under Federal Rule of Evidence 902(4). Notably, however, the record shows Winick did not make either of these arguments before the Bankruptcy Court. Indeed, Winick's counsel made no attempt to admit the Certificate into evidence or challenge the Bankruptcy Court's hearsay ruling at the hearing.[48]

The Bankruptcy Court did not err in ruling the testimony regarding the LLC's status was hearsay and did not prohibit Winick from challenging the hearsay ruling in any way. Further, as Winick's counsel failed to challenge the hearsay ruling, Winick has forfeited this evidentiary argument on appeal.[49]

### 4.     The Bankruptcy Court Did Not Abuse Its Discretion by Declining Leniency to Winick.

Winick contends there is a basis for leniency for pro se litigants[50] in regard to the application of local rules and procedures.[51] It is well established courts liberally construe pro se filings, and it is likewise well established that pro se parties are bound by "the

---

[48] *See id.*

[49] *See United States v. Foreman*, 84 F.4th 615, 619 (5th Cir. 2023) (holding the government "forfeited any argument concerning the public records exception to the hearsay rule" by failing to argue it before the district court); *see also United States v. Otuonye*, 995 F.3d 1191, 1207–08 (10th Cir. 2021) (holding the defendant forfeited an evidentiary objection to the extent it was not raised in the district court).

[50] Winick "prepared for trial *pro se*," which included submitting his exhibits, and "decid[ed] to gain counsel solely for the purpose of trial day assistance." Appellant's Br. at 35.

[51] Appellant's Br. at 37.

same rules of procedure that govern other litigants."[52] "Pro se parties are expected to comply with all court rules as if they were attorneys in fact."[53] Further, pursuant to Local Rule 9017-1(C), "[a]ll exhibits which are intended to be offered in evidence at a trial or hearing must be marked for identification and provided to opposing counsel and three (3) copies to the Court . . . at least five (5) business days prior to the trial or hearing."[54]

Winick delivered his exhibits to opposing counsel and the Bankruptcy Court the day prior to the Claim hearing. At the outset of the Claim hearing, Winick's counsel, who Winick had hired solely to assist him at the hearing,[55] "ask[ed] for lenience" from the Bankruptcy Court regarding the admission of exhibits.[56] The Bankruptcy Court held: "the documents attached to the proof of claim are not evidence unless they themselves are offered as evidence."[57] Notwithstanding the failure to adhere to the local rules, the Bankruptcy Court ultimately admitted the attachments to the Claim as exhibits but not all of the documents on Winick's exhibit list.[58] The Bankruptcy Court considered these

---

[52] *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

[53] *Toussaint-Hill v. Woods*, No. 07-CV-179, 2007 WL 2325488, at *2 (N.D. Okla. Aug. 10, 2007) (unpublished).

[54] The Bankruptcy Court previously notified the parties of this rule. *See* Bankr. ECF No. 73 ("Parties [are] reminded that to present evidence, they must file a list of witnesses and exhibits with the Court no later than December 21, 2023, and submit their exhibits to chambers 5 days before the hearing.").

[55] Appellant's Br. at 35.

[56] *Am. Tr.* at 7–8, *in* Appellant's App. at 257–58.

[57] *Id.* at 7, *in* Appellant's App. at 257.

[58] *Id.* at 58–59, *in* Appellant's App. at 308–09. The Bankruptcy Court admitted Appellant's first two exhibits, which were "exhibits attached to Proofs of Claim and Objection to Proofs of Claims" and "communications between Mr. Harding and Mr. Winick." Appellant's Br. at 37.

attachments to the Claim (i.e., the copy of the Agreement and the copy of the email Winick sent to Harding) and relied on them in its ruling at the Claim hearing.

Winick argues the Bankruptcy Court incorrectly refused to "allow leniency" to Winick during the Claim hearing in light of his status as a pro se litigant,[59] particularly regarding the untimely delivery of exhibits to the Bankruptcy Court.[60] He argues that even though the Bankruptcy Court ultimately admitted select exhibits, "[d]isallowing the evidence book at the beginning of testimony crippled Winick's ability to present his case at trial and allowing only exhibits 1 and 2 instead of the whole evidence book did not reverse harm."[61]

Given that pro se litigants are bound by the same procedural rules as counseled litigants, the Bankruptcy Court did not abuse its discretion by not admitting all of the exhibits on Winick's exhibit list. Winick failed to comply with the local procedures for admitting exhibits, and thus, the Bankruptcy Court's actions fall within its discretion.

### 5. The Bankruptcy Court Did Not Abuse Its Discretion by Restricting Winick's Testimony.

At the Claim hearing, Winick's counsel conducted the direct examination of Winick. During that testimony, Winick's counsel asked Winick about Harding's deposition testimony in the underlying state court action: "Well, and then based on what you have attached to your response, which is the deposition testimony of Mr. Harding, he

---

[59] Appellant's Br. at 2.
[60] *Id.* at 41.
[61] Appellant's Reply Br. at 22.

14

agrees with you; correct? There wasn't – there was not a formal contract?"[62] Although

Winick responded "yes" to the question, the Bankruptcy Court stated "Wait. You just put

words in his mouth. That's not what he was saying."[63] The Bankruptcy Court then

proceeded to ask Winick a series of questions about the Agreement.[64] During that

exchange, Winick testified he believed what he signed was a contract and not simply an

estimate.[65] The Bankruptcy Court then stated on the record: "Okay. That is different than

what you were telling [your counsel] he testified to."[66] The Bankruptcy Court then told

Winick's counsel, "So I want you to ask him questions where he answers you, not where

he gives you a yes or no because then that's your testimony and not his."[67] Winick's

counsel responded, "Yes, Your Honor."[68]

Winick argues the Bankruptcy Court "erred in conducting a non-impartial cross-

examination of [him] and thus became an advocate for the Trust resulting in judicial

bias."[69] According to Winick, the Bankruptcy Court's "questions impugn[ed]

malfeasance on the part of [Winick's counsel] and then order[ed] a very strict

requirement for only [Winick's] side to follow."[70] Winick notes the Bankruptcy Court

allowed Harding's counsel to ask Harding "yes or no" questions "many times."[71] Winick

---

[62] *Am. Tr.* at 19, *in* Appellant's App. at 269.
[63] *Id.*
[64] *Id.* at 19–20, *in* Appellant's App. at 269–70.
[65] *Id.* at 20, *in* Appellant's App. at 270.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] Appellant's Br. at 42.
[70] *Id.*
[71] *Id.* at 43.

also contends the Bankruptcy Court showed "hostility" to him by commenting "[w]e have been through this rodeo before with this same claimant" (referring to a prior hearing regarding an objection to the Claim) and "taunt[ing]" him by stating, in reference to the argument regarding the LLC's administrative status, "[t]hat's a bold claim that could easily have been supported."[72]

Contrary to Winick's arguments, there was no abuse of discretion on the part of the Bankruptcy Court in directing Winick's counsel to avoid "yes or no" questions when examining Winick as Federal Rule of Evidence 611(c) directs, "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony."[73] The Bankruptcy Court appropriately found counsel's use of leading questions exceeded the scope of permissible development of witness testimony.

As to the Bankruptcy Court's interjection and questions, a trial judge is allowed to participate in the trial and ask witnesses questions to ascertain the facts but "cannot show [hostility] toward one side or become an advocate for one side."[74] The Bankruptcy Court's intervention and overall conduct during the Claim hearing did not rise to a level of hostility or advocacy toward one side.

## VI.    Conclusion

For the reasons stated above, we AFFIRM the decision of the Bankruptcy Court.

---

[72] *Id.* at 44 (quoting *Am. Tr.* at 8, 15, *in* Appellant's App. at 258, 265).
[73] Fed. R. Evid. 611(c).
[74] *United States v. Wheeler*, 444 F.2d 385, 390 (10th Cir. 1971).